IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

James Smith,

                Plaintiff,

     v.

Tarry Williams, *et al.*

                Defendants.

Case No.: 23-cv-50074

Judge Iain D. Johnston

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Howard Smith is an inmate at Dixon Correctional Center with a serious and painful problem. For over two years, Smith hasn't had *any* upper teeth and hasn't been able to obtain dentures from the prison's medical provider, Defendant Wexford Health Sources. Smith claims that Wexford has denied him dentures in violation of the Eighth Amendment, and that the administrative employees (the "Medical Schedulers") responsible for scheduling appointments were deliberately indifferent to his medical needs.

Wexford and its administrators move to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Smith has failed to state claims under 42 U.S.C. § 1983. For the reasons explained below, the Medical Schedulers' motion is granted, and Wexford's is denied.

## I.     Background

Defendant Wexford Health Sources is a private medical provider for the Illinois Department of Corrections.  It's not exactly known for customer satisfaction.  Plaintiff James Smith, for instance, is an inmate at Dixon Correctional Center, who claims that Wexford delayed necessary dental care for at least a dozen inmates.  Third Am. Compl. (Dkt. 63) ¶ 29.  The Court takes the following allegations from Smith's Third Amended Complaint and accepts them as true for the purposes of deciding this Motion.

Essentially, Smith argues, Wexford takes a disturbing approach to medical treatment; instead of "do no harm," it seems, the providers just "do nothing." *Id* ¶ 29; *see generally, id.*  Wexford commonly delays inmate dental care by several years.  *See id.* ¶¶ 25, 32, 36.  And there's reason to believe these lengthy delays are not a bug, but a feature of Wexford's care philosophy.  *See id.* ¶ 33.  Under its contract with IDOC, Wexford pays 100% of offsite medical costs that are incurred outside a hospital.  *Id.* ¶ 33.  That policy naturally incentivizes Wexford to deny and delay inmate requests for offsite care.  *Id.* ¶ 22.  To make matters worse, Wexford doesn't seem to supply much *onsite* dental care, either.  *Id.* ¶ 35.  Its dental services are—to put it lightly—spotty.  *Id.*

When Wexford does supply a dentist, a couple days a week, he triages the inmates.  *Id.* ¶ 26.  Emergency treatments (like extracting teeth) take top priority, and chronic conditions (like extract*ed* teeth) fall by the wayside.  *Id.* ¶ 26.  Currently, Smith estimates that twelve Dixon inmates are waitlisted for denture

fittings. *Id.* ¶ 29. Some joined the list more recently, and some have waited years. *Id.* Smith falls in the latter grouping. He initially requested a denture fitting in June 2020, just after Wexford's dentist removed his last four teeth. *Id.* ¶ 11. Wexford's dentist promised to update Smith on appointment availability, but never did. *Id.*

So, Smith tried again, in a series of follow-up appointments with Wexford's medical director, Dr. Larry Sy. *Id.* ¶ 19. When Smith asked Dr. Sy about scheduling an appointment to be fitted for dentures, the doctor laughed, smiled, and nodded. *Id.* Nothing else. In Smith's opinion, Dr. Sy didn't take his care request seriously. *Id.* ¶ 22. Dr. Sy had never granted an inmate request for offsite services before, and he didn't grant Smith's, either. *Id.* ¶ 33.

Again, Smith tried again. In early 2021, he filed a written inmate request with Dixon Healthcare, and Wexford claimed to place Smith on an appointment waiting list. *Id.* ¶ 12. It warned, however, that the COVID-19 pandemic had seriously stalled the inmates' dental care. *Id.* So, at this point, Smith was months away from his extractions and—although he didn't know it yet—years from getting dentures.

Smith kept trying for two and a half years. He filed a second written request for dentures in January 2022 and, in response, Wexford explained that "the wait time for denture partials is 20 months. So, it will still be a while until we get to

your name."[1]  *Id.* ¶ 13.  Smith filed a third grievance directly with the prison, which rerouted the complaint to its Americans with Disabilities ("ADA") Committee—also unable to assist—and a fourth with the Administrative Review Board.  *Id.* ¶ 14. The Board declined to intervene too, noting that the prison would address the issue in its own time.  *Id.*

Unsurprisingly, by the beginning of 2023, Smith was in considerable pain. *Id.* ¶ 15.  His gums were constantly bleeding, he was unable to eat properly, and he'd been banging his head against a proverbial brick wall for thirty months now. *Id.*  By Wexford's own estimate, Smith should have received dentures in August 2024.  But his Third Amended Complaint doesn't indicate whether he received dentures early, late, or at all.  For purposes of this Motion, the Court relies only on the dates provided in Smith's Complaint, for a minimum of thirty-months' delay in dental care.

On these allegations, Smith contends that Wexford maintained a policy or custom of denying and delaying inmate dental care, which resulted in his pain and suffering.  He argues that Wexford's policy of delaying dentures results in cruel and unusual punishment, in violation of the Eighth Amendment, and that the Medical Schedulers contributed to his injuries by failing to schedule a denture fitting appointment.

---

[1] In this letter, Wexford also offered to prescribe Smith a soft diet.

## II.    Analysis

Under Rule 8, the plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court accepts as true all the plaintiff's well-pleaded allegations and views them in the light most favorable to the plaintiff.  *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019).

"Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.  "But the proper question to ask is still 'could these things have happened, not *did* they happen.'" *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quoting *Swanson v. Citibank*, N.A., 614 F.3d 400, 404–05 (7th Cir. 2010) (emphasis in original)).  Importantly, on a motion to dismiss, the defendant bears of the burden of establishing the insufficiency of the complaint's allegations.  *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

### a.  The Medical Schedulers' Motion to Dismiss

The allegations of Smith's Third Amended Complaint fail to state a deliberate indifference claim against IDOC's Medical Schedulers.  Claims of constitutionally inadequate medical care by inmates serving prison sentences are governed by the

5

Eighth Amendment. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). To state a claim of inadequate medical care under the Eighth Amendment, an inmate must plausibly suggest that (1) he suffered from an objectively serious medical condition, and (2) the defendant was deliberately indifferent to that serious condition. *Id.* In this case, no one doubts that Smith suffered from a serious medical condition. The only question before the Court is that of deliberate indifference.

Prisoners can predicate deliberate indifference claims on allegations of denials or delays in obtaining dentures. *See Hunt v. Dental Dep't.*, 865 F.2d 198, 200 (9th Cir. 1989) (the "Eighth Amendment requires that prisoners be provided with a system of *ready access* to adequate dental care.") (emphasis added). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez*, 792 F.3d at 776 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Essentially, the claim is predicated on some allegations of personal knowledge.

Smith's allegations against the Medical Schedulers read, in full, "[the Defendants] who work in the scheduling office have failed in their responsibility to schedule dental appointments for the [P]laintiff to get fitted for an upper plate." Pl.'s Third Am. Compl, ¶ 20. But there's no indication that these employees knew Smith needed an appointment. In fact, Smith doesn't claim that he's interacted

with even one of the six schedulers named in his Complaint. His claim is entirely speculative.[2]

Smith's reliance on *Payton v. Williams* is also misguided. No. 14-cv-2566, 2017 U.S. Dist. LEXIS 197535, at *16 (N.D. Ill. Dec. 1, 2017). He cites this case for the proposition that "the Court is required to accept Plaintiff's well-plead allegations as true in deciding the motion to dismiss," although "[i]t may turn out to be the case that the Medical Defendants had no control over scheduling." *Id.* Counsel has conveniently abridged this quote, though. In the immediately preceding sentence, the *Payton* court acknowledged that its medical defendants "saw Plaintiff during discrete visits." *Id.*

Smith's allegations pale in comparison. He hasn't described a phone call, letter, formal grievance, oral request, smoke signal, or even fleeting interaction where the Defendants could plausibly have learned of his condition. Prison employees need not be clairvoyant. So, Smith's allegations against the Medical Schedulers fail to state a claim.

### b. Wexford's Motion to Dismiss

Smith's claim against Wexford, on the other hand, does plausibly allege that Wexford was deliberately indifferent to his serious medical needs. There, Smith

---

[2] In Response to the Schedulers' Motion to Dismiss, Smith seems to acknowledge that fact. He makes an unsupported call for more discovery. "Since it is unclear at this time how scheduling is done," he says, "the defendant schedulers cannot be dismissed." Pl.'s Resp. to Medical Schedulers' Mot. to Dismiss (Dkt. 95), 2. That has no basis in law, and, indeed, it flies in the face of controlling precedent. *See Twombly*, 550 U.S. at 545; *see Iqbal*, 556 U.S. 662 at 678.

7

alleges that two Wexford employees knew he needed dentures, and yet, failed to provide them for two and a half years. As a corporation, Wexford can only act through its agents so their failures to act despite knowing they must act can lead to liability for Wexford under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Because Smith brings suit against Wexford itself, the claim must arise under *Monell* as a private company acting under color of state law. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). *Monell* liability may lie in three circumstances: (1) the defendant employs an express policy that causes the constitutional injury, (2) the defendant has established a widespread practice that is so well settled that it constitutes a custom or usage, or (3) the defendant has final policymaking authority and caused the constitutional injury. *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Smith's Third Amended Complaint describes an express policy in Wexford's Healthcare Provider Handbook, where Wexford allegedly instructs providers not to issue dentures.

Having identified an express policy, [3] the Court proceeds to the question of causation. A *Monell* plaintiff must plausibly suggest that the policy or practice was

---

[3] Smith has also plausibly suggested that Wexford has a custom of obstructing dental care. He claims that at least twelve Dixon inmates are currently waitlisted to receive dentures.

Wexford argues that these twelve inmates don't represent a widespread pattern or practice. This argument overstates the notice-pleading standard. At this stage, Smith must plausibly suggest that Dixon systematically delays its denture fittings. And he does so, not only by identifying those twelve inmates, but also by describing Wexford's standard operating procedures.

Smith plausibly suggests a custom of deferring dental care in three ways. First, he cites the 2020 Lippert Report's finding that Dixon's dental suite was understaffed just two

the direct cause or moving force behind the constitutional violation. *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Smith's allegations create the very reasonable inference that Wexford's Healthcare Provider Handbook, which tells employees to withhold dentures, not surprisingly, caused Wexford healthcare providers to withhold dentures. Wexford disagrees. It notes that providers didn't flatly deny Smith treatment, as the policy suggests, but instead placed him on a lengthy waiting list. Def.'s Mot. to Dismiss (Dkt. 65), 2. This is semantic nonsense.

Essentially, Wexford argues that the alleged policy of denying denture fittings didn't cause Smith's injuries, because he only suffered an extended delay. *Id.* at 3. Denials are, however, part and parcel of delays.[4] Each time Dr. Sy refused to refer Smith for a fitting (in accordance with the policy), he both denied medical treatment and extended the delay. Smith had no information about his dentures for well over a year. And once he was, eventually, enrolled on the nearly two-year

---

months after Smith's extractions. Second, Smith notes that offsite care is always unavailable, for one reason or another. And third, he claims, Wexford's onsite care is unreliable. Its part-time dentist frequently extracts teeth and never implants dentures. The plausible consequence of these policies is to systematically forestall dental care. So, even if Smith hadn't identified an express policy, there'd still be implied policy underlying his *Monell* claim.

[4] Speaking of delays: The many ambiguities of Smith's Third Amended Complaint stalled this Court's decision. Although his indiscriminate references to denials and delays don't have a legal consequence, they're very frustrating and very vague.

Critically, though, the Federal Rules of Civil Procedure "do not permit the courts to dismiss § 1983 municipal liability claims for lack of factual specificity under Rule 12(b)(6)." *McCormick*, 230 F.3d at 325. So, Smith's Third Amended Complaint does land somewhere above the notice-pleading standard—just not above reproach.

waitlist, he still didn't receive care. Call it what you will: Smith was functionally denied dentures for years.

What Wexford's noted is, perhaps, a deficiency in legal *theory*, but not in legal claim. *See Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("A drafter who lacks a legal theory is likely to bungle the complaint (and the trial); you need a theory to decide which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.").

Furthermore, Smith has plausibly suggested these delays were purposeful— not natural and unavoidable as Wexford claims. In its second attack on causation, Wexford argues that Smith's injuries weren't the result of any express policy, but merely an inhered and unavoidable delay in prison services. Def.'s Resp. in Support of its Mot. to Dismiss (Dkt. 89), 4. To that end, it cites *Hildreth v. Butler*, 960 F.3d 420, 424 (7th Cir. 2020) (summary judgment case holding that a 19-month delay in prison healthcare wasn't unconstitutional).

And, indeed, natural delays in prison healthcare aren't generally actionable. *Walker v. Ghosh*, No. 13-CV-01354, 2015 U.S. Dist. LEXIS 37443, at *5 (N.D. Ill. Mar. 25, 2015) ("prison officials are not deliberately indifferent when they place inmates on a waiting list for care, despite the natural delays."). But that's not the picture Smith paints. Smith argues that Wexford's strategic financial decisions

unnaturally and needlessly delayed inmate healthcare.  So, *Hildreth* is neither controlling nor persuasive.[5]

A better parallel is *Wynn v. Southward*, where an inmate stated a claim against prison medical providers by pleading that their failure to give him dentures for three months caused him pain, bleeding, and difficulty eating.  251 F.3d 588, 591 (7th Cir. 2011).  Smith's Third Amended Complaint contains almost identical allegations.  Wynn and Smith suffered the same symptoms from the same cause, both for long periods of time.  The largest difference between the two cases is that Smith waited thirty months and Wynn waited just three.  *Compare id. with* Pl.'s Third. Am. Compl. ¶¶ 11, 14—15.  So, not only did Smith plead the same core allegations as Wynn; he waited *ten times longer* than the Seventh Circuit previously found sufficient to state a deliberate indifference claim.  In sum, Smith's Third Amended Complaint plausibly suggests that Wexford has a policy or custom of unconstitutionally impeding inmate denture fittings.

---

[5] Not for the first time (and surely, not for the last), the Court reminds the parties to rely on cases that were decided in the same procedural posture.  *See* Hon. Iain D. Johnston Standing Order, Supporting Memoranda and Exhibits.  *Hildreth* is a summary judgment case.  It also turns on fewer and less extreme allegations.  Smith waited for treatment a year longer than Hildreth and identified about a dozen inmates encountering delays.

By contrast, Hildreth only alleged delays in his own treatment.  And, as the *Hildreth* Court acknowledged, establishing a widespread pattern or practice solely based on personal experience is "necessarily more difficult" than alleging multiple instances, as Smith does in his Complaint.  *Hildreth*, 960 F.3d at 426 (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)).

## II. Conclusion

For the reasons explained above, Wexford's motion to dismiss Smith's *Monell* claim [65] is denied, and the Medical Schedulers' Motion [87] is granted.


Entered: October 28, 2024                                By:_____

                                                     Iain D. Johnston
                                                     U.S. District Judge